UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAURICE ROMERO, | Civil Action No. 14-6344-BRM |
| Petitioner, | |
| v. | OPINION |
| PATRICK NOGAN, et al., | |
| Respondents. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is the petition for a Writ of Habeas Corpus of Petitioner Maurice Romero ("Petitioner") brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the petition. (ECF No. 11.) For the reasons set forth below, Petitioner's habeas petition is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.

I. **BACKGROUND**

In 1988, a jury in Ocean County, New Jersey, convicted Petitioner of first-degree murder, felony murder, first-degree aggravated sexual assault, first-degree armed robbery, second-degree burglary, and third-degree theft. (ECF No. 1 ¶ 5; ECF No. 11 ¶ 5.) In its opinion affirming the denial of Petitioner's application for Post-Conviction Relief ("PCR"), the New Jersey Superior Court, Appellate Division, provided the following summary of the factual background of Petitioner's trial:

> [E.S.], age 86, was raped, beaten and died several minutes later. Her husband [M.S.], age 94, who was confined to bed, was also beaten about the face. The State's case was based mostly upon the testimony of [co-defendant] Anthony Evans. He indicated that [Petitioner], [co-defendant] Casey Terry and he set out to rob the [S.] residence at approximately 8:30 p.m. Terry broke into the house

1

using a knife and, wearing masks and gloves, [Petitioner] and Terry went inside while Evans maintained a lookout outside. However, from a window, Evans saw [Petitioner] look about the house for money as Terry sexually assaulted and hit the elderly woman. Then, while Terry searched the house, [Petitioner] sexually assaulted the woman while threatening her with a knife. Terry raped the woman three times and repeatedly beat her while [Petitioner] raped her twice. [Petitioner] and Terry left the house approximately 30–45 minutes later.

[Petitioner] testified and admitted that all three of them had gone to the [S.] house that night with the intention of robbing them and that he and Terry entered the house while Evans remained outside as a lookout. He also admitted that Terry beat and raped the woman while he searched the house. He insisted that he had only attempted to sexually assault the woman. Ultimately, they left without any money. As [Petitioner] was leaving, however, he claimed that he saw the victim moving and that she was not dead. [Petitioner] contended that approximately five hours after this incident, Terry went back to retrieve the knife at which time he again raped and beat the victim, after which he set fire to the house. This caused the victim to die of smoke inhalation. . . .

The following morning [E.S.'s] dead body, bloody, naked and beaten was found on the floor a few feet from her husband by officials. [M.S.] was beaten but was still alive in his hospital bed. The house was ransacked and there was smoke and fire damage to the master bedroom.

That same morning, Evans heard about the victim's death. He went to the prosecutor's office and voluntarily told everything he knew about the night in question and agreed to testify against the others. Later that same morning, [Petitioner] also agreed to go to the prosecutor's office where he gave the police an incriminating statement.

Dr. Sinha, who performed the autopsy of [E.S.] . . . attributed the cause of death to "acute cardiac arrhythmia, associated with severe coronary arteriosclerosis and secondary to forcible rape and sodomy." He asserted that she died within ten minutes of the beating. Dr. Sinha also acknowledged that a toxicologist's report showed 38% carbon monoxide in the blood, indicating the inhalation of smoke, but denied that this was a fatal amount.

> At trial, [Petitioner's] expert, a forensic pathologist, insisted
> that the victim's cause of death was smoke inhalation superimposed
> on a preexisting severe heart disease and was not due to the beating.

*State v. Romero*, No. A-4246-10T1, 2013 WL 1296259, at *1–2 (N.J. Super. Ct. App. Div. Apr. 2, 2013) (citing *State v. Romero*, No. A315-88, Slip Op. 10-12 (N.J. Super. Ct. App. Div. Oct. 4, 1990)).

Petitioner's co-defendant, Terry, had pled guilty to the murder of E.S. and at the time of trial was awaiting sentencing; he did not testify at Petitioner's trial. *Id.* at *2. Petitioner's defense counsel sought to introduce into evidence select parts of Terry's statement to police that favored Petitioner, *i.e.*, that Terry later returned to the house, while keeping out the portions that inculpated Petitioner. *Id.* The trial court denied this request, finding the statements inadmissible as prejudicial and confusing. *Id.* In his motion for a new trial and on appeal, Petitioner's defense counsel raised a variety of issues regarding Terry's statement, including the no-adverse inference charge as to Terry's choice not to testify, the accomplice liability charge, and the claim of unfair publicity resulting from the media's publication of portions of Terry's statement it heard during the judge's ruling, which occurred outside of the presence of the jury. *Id.* Petitioner also argued the verdict as to counts one (first-degree murder) and two (felony murder) were against the weight of the evidence. *Id.* Both the trial court and the Appellate Division rejected all of Petitioner's arguments. *Id.* The New Jersey Supreme Court denied Petitioner's petition for certification on December 24, 1990. *State v. Romero,* 127 N.J. 324 (1990).

In May 1993, Petitioner filed a *pro se* petition for PCR. *Id.* Petitioner was assigned counsel, but for unknown reasons, the petition went unheard and nothing happened until April 11, 2002, when Petitioner filed another PCR petition. *Id.* In his 2002 PCR petition, Petitioner asserted his due process rights were violated by the trial court's exclusion of favorable evidence (*i.e.*, Terry's

3

statement) and the court's jury charge on accomplice liability. *State v. Romero*, No. A-4192-06T4, 2008 WL 4648226, at \*2, n.1 (N.J. Super. Ct. App. Div. Oct. 10, 2008). The PCR court dismissed the 2002 petition as untimely. *Id.* at \*2. In 2008, the Appellate Division reversed the trial court's dismissal and remanded the matter for a hearing on the merits. *Id.* at \*4.

On remand, in supplemental briefing, Petitioner argued, among other things, that his appellate counsel was ineffective for failing to raise the exclusion of Terry's statement on appeal. *Romero*, 2013 WL 1296259, at \*2. The PCR court found this argument was procedurally barred by New Jersey Court Rule 3:22-5 as having previously been adjudicated on the merits. Nevertheless, the court addressed the merits of the claim and found Petitioner had not been prejudiced by the exclusion of Terry's statement because, "although [the statement] contained sections allegedly exculpatory to [Petitioner]," it also "contain[ed] several sections inculpating [Petitioner] in the crime for which he was on trial." *Id.* at \*3 (internal quotations omitted). The Appellate Division affirmed "substantially for the reasons articulated by the PCR judge." *Id.*

Petitioner filed his present petition for a writ of habeas corpus in October 2014. (ECF No. 1.) He raises two grounds for relief. First, Petitioner argues the trial court's exclusion of Terry's statement violated his right to due process. (*Id.* at 6.) Second, Petitioner argues the court's jury instruction on accomplice liability was unconstitutional because the trial judge "told the jury that they may find the petitioner guilty if they find that the co-defendant (Terry) committed the crime of murder." (*Id.* at 8.)

II. **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

4

States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DECISION

#### A. Petitioner's Exclusion of Evidence Claim

Petitioner first contends the state courts erred in excluding the selective parts of Terry's statement at trial that Petitioner alleges were exculpatory. Because "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 (1983), a challenge to the admissibility or exclusion of evidence is normally considered a question of state law not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); s*ee also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). Because habeas exists to remedy violations of federal law and not state law issues, a habeas petitioner may only seek relief in his habeas petition for a state law evidentiary issue where he can show the admission of the evidence in question denied his right to due process under the Fourteenth Amendment insomuch as the evidence deprived him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered

the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

Here, Petitioner alleges his co-defendant, Terry, who did not testify at Petitioner's trial, gave a statement to the prosecutor stating, according to Petitioner, that Terry returned "to the victim's home and murdered her." (ECF No. 1 at 6.) The relevant portion of Terry's statement reads as follows:

> It was about I'd say about 2:00 and I went back over there to check it out see if anything to check it out try to get up in the attic, but I couldn't get up there so I dragged the lady in the living room she was still moving so I walked in the back room and I like took the mattress off the bed and then I came back in there and she was still moving and I went in there and grabbed a piece of paper lit it on fire from the stove brung it back in the back room and put it on the mattress and it just caught up and I just left.
>
> Q: What was your reason in moving her out of the back room, out of the kitchen?
>
> A: Cause if someone had a sort of the porch door open they would have came back there and saw the lady laying in the kitchen
>
> Q: While you were in there?
>
> A: Or while I was done
>
> . . .
>
> Q: Did you do anything else to that lady when you were in the house at that time other than move her?
>
> A: No
>
> . . .
>
> Q: Alright and what was your reason for setting the bed on fire?
>
> A: To cover up for my mistakes

(Ex. To Pet. (ECF No. 1-1) at 39-40.) At trial, Petitioner sought to admit only those portions of Terry's statement alleged to be exculpatory while excluding the rest. The trial court denied the

7

request because admitting the statements would have been prejudicial and confusing. *Romero*, 2013 WL 1296259, at *2. As noted by the PCR court and the Appellate Division, Terry's statement, on the whole, also inculpated Petitioner in the crimes for which he was charged and further corroborated portions of Evans's account. The statement also contradicted portions of Petitioner's own testimony, namely, his claim that Terry returned to the house and once again raped and beat the victim. In his statement, Terry told the investigators that when he returned to the residence, he did not do anything else to the victim other than move her into the living room. Terry did not, as Petitioner alleges, state that he returned to the house and "murdered" the victim.

Because Petitioner has presented the Court with no Supreme Court case to which the New Jersey courts' decisions were contrary, or which the state courts unreasonably applied, and has likewise failed to show their decision was an unreasonable reading of the facts of his case, Petitioner would only be entitled to relief if he could show the exclusion of the statement is itself fundamentally unfair. Petitioner has failed to do so. The Supreme Court "ha[s] never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986). As described above, the excluded evidence at issue, considered within the context of this record, did not deprive Petitioner of a fundamentally fair trial, and Petitioner has presented no Supreme Court cases so establishing. Petitioner is therefore not entitled to habeas relief on this claim.

## B. Petitioner's Jury Instruction Claims

Petitioner next asserts the jury instruction regarding accomplice liability given at his trial was unconstitutional because the court told the jury they could find Petitioner guilty if they found that Terry committed the crime of murder. That a jury "instruction was allegedly incorrect under

state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 534 U.S. 919 (2001). Therefore, the court can only grant a habeas petitioner's relief based on an allegation of improper jury instructions at trial where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). The Supreme Court has held the "category of infractions that violate fundamental fairness" is very narrow, *Estelle*, 502 U.S. at 72-73, and the challenged jury instruction must be considered in the context of the entire charge and the trial as a whole, with habeas relief only available where the charge was so erroneous that it resulted in a violation of due process in light of all the relevant facts. *Duncan*, 256 F.3d at 203. Even where the instruction in question was "undesirable, erroneous, or even universally condemned," habeas relief will not be warranted solely on that basis, and will only be available where the instruction rendered the trial fundamentally unfair. *Id.*

On direct review, the Appellate Division denied Petitioner's challenge to the trial judge's instruction regarding accomplice liability; however, Petitioner's argument concerning the instruction on appeal addressed a different issue than the one he appears to raise in his present petition. In any event, Petitioner's claim lacks merit.[1] Specifically, Petitioner's description misconstrues and oversimplifies the trial court's instruction on this point. The trial judge instructed the jury that Petitioner may be convicted on a theory of accomplice liability if the State proved beyond a reasonable doubt that Terry committed the crime of knowing and purposeful murder,

---

[1] To the extent that this claim may be unexhausted, this Court will deny it on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). *See Carrascosa v. McGuire*, 520 F.3d 249, 255 n.10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . Denying an unexhausted claim on the merits is consistent with the statute").

that Petitioner acted purposely to promote, advance, launch, or facilitate the crime, and that Petitioner aided or attempted to aid Terry's efforts in committing the crime. (Trial Tr., May 19, 1988 (ECF No. 11 at 25-27).) Having reviewed the instruction, this Court concludes the charge was not unconstitutional and did not violate Petitioner's due process rights. Petitioner has failed in any meaningful way to show the instruction was erroneous, let alone that it was so erroneous as to render his trial fundamentally unfair. The instruction addressed all of the necessary elements, including the standard of proof beyond reasonable doubt, Petitioner's required mental state, and Petitioner's intention to facilitate and advance the crime. Nothing in the charge appears to have had the capacity to mislead or corrupt the jury's determination of the facts, and this Court is convinced the accomplice liability jury charge did not render Petitioner's trial fundamentally unfair. Petitioner is therefore not entitled to habeas relief on that basis. *Duncan*, 256 F.3d at 203.

**C.     Timeliness of the Petition**

Respondents argue Petitioner has not demonstrated his petition was filed within the statutory deadline. (ECF No. 11 at 12.) On May 7, 2015, Petitioner filed a letter application requesting an extension of time to file a traverse to address Respondents' timeliness argument. Because the Court concludes Petitioner's petition was timely filed, Petitioner's request is denied as moot. Petitioner's conviction became final before AEDPA was passed, and therefore, the one-year statute of limitations pursuant to 28 U.S.C. § 2244(d) began to run on its passage date in 1996. *Taylor v. Horn*, 504 F.3d 416, 426 (3d Cir. 2007). Petitioner properly filed his first petition for PCR in 1993. Though that first PCR petition was ultimately unaddressed by the state courts, it remained pending at the time of AEDPA's passage. The statute of limitations therefore remained tolled until the PCR proceedings concluded with the New Jersey Supreme Court's denial of

certification on October 9, 2013. *See* 28 U.S.C. § 2244(d)(2). Petitioner filed the instant petition on or about October 7, 2014. Therefore, the petition is timely.

IV. **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insomuch as Petitioner's claims are without merit, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further and a certificate of appealability is therefore denied.

V. **CONCLUSION**

For the reasons stated above, Petitioner's habeas petition (ECF No. 1) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. Petitioner's request for an extension of time in which to file a traverse addressing timeliness is **DENIED** as moot. An appropriate order will follow.

**Date:** May 9, 2018  */s/ Brian R. Martinotti*  
**HON. BRIAN R. MARTINOTTI**  
**United States District Judge**